# EXHIBIT "A"

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement) is made as of September, 12, 2007 (the "Effective Date") by and between Apex Mortgage Corporation (hereinafter "AMC"), a Pennsylvania corporation with its principal place of business located at 185 Commerce Drive, Unit 102, Fort Washington, Pennsylvania 19034 and Apex Financial Group, Inc. (hereinafter "AFGI"), a Florida corporation with its principal place of business located at 215 West Bloomingdale Avenue, Brandon, FL 33211.

**DEFINITIONS:**

"Substantive" shall hereinafter be interpreted to include any term other than an article or preposition.

**I.    RECITALS**

1. AMC's predecessors-in-interest began using the "APEX" designation in connection with commercial lending services on or around 1969.

2. AMC incorporated in the Commonwealth of Pennsylvania in 1991 for the purpose of providing commercial lending services.

3. Since 1991, AMC has used the "APEX" designation in connection with commercial lending services in Pennsylvania and throughout the United States.

4. In August 1999, AMC filed an application number 75/776,162 (hereinafter "the '162 Application") to register the service mark "APEX MORTGAGE CORP." with the United States Patent and Trademark Office for use in connection with "commercial mortgage lending services," which matured into Registration No. 2,990,801.

5. In 1993, AFGI incorporated in the State of Florida for the purpose of providing lending services.

6. Since its inception, AFGI has used the "APEX" designation in connection with lending services in Florida and throughout the United States.

7. The parties hereto wish to resolve the Action and avoid future disputes and litigation by entering into a co-existence agreement that would settle their disputes in the Action and allow the parties to continue to use their respective marks.

## II. AGREEMENT

In consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, AMC and AFGI agree as follows:

8. Upon the execution of this Agreement, AFGI shall immediately commence efforts to phase out all use of the "APEX MORTGAGE" designation. AFGI shall replace all existing use of "APEX MORTGAGE" with a designation that does not include the words "APEX" or "AAPEX" and "MORTGAGE" adjacent to one another without an intervening additional substantive term or phrase. AFGI shall replace all use of the "APEX MORTGAGE" designation, including but not limited to, internal and external communications, websites displays, domain name registrations, network branches, in print advertising, radio advertising, and AFGI shall not identify itself as "APEX MORTGAGE" when its representatives, employees, independent contractors, and/or agents answer the telephone. AFGI shall complete and accomplish the foregoing changes within ninety (90) calendar days after the Effective Date of this Agreement.

The foregoing paragraph shall apply to any and all uses by AMC of the name "APEX MORTGAGE" or "AAPEX MORTGAGE" designations, whether for commercial or residential mortgage applications, whether now known or hereafter created, including without limitation all

uses by AFGI and its network branches in their respective in advertising, marketing, telemarketing, letterhead, stationery, internet web sites, and electronic media.

9. AFGI shall instruct its employees, directors, agents, and independent contractors, to promptly forward to AMC each and every inquiry in which it is known that the consumer intended or is trying to reach AMC and not AFGI. In all events, such referrals shall be directed to AMC within two business days following any such initial inquiry.

10. AMC shall instruct its employees, directors, agents, and independent contractors, to promptly forward to AFGI each and every inquiry in which it is known that the consumer intended or is trying to reach AFGI and not AMC. In all events, such referrals shall be directed to AFGI within two business days following any such initial inquiry.

11. AFGI shall not directly or indirectly seek to cancel, impede or otherwise interfere with AMC's federal registration of the mark found in U.S. Reg. No. 2,990,801 in connection with "commercial lending services." However, AFGI retains the right to assert any and all other defenses in the event that a suit is brought against it by AMC.

12. Upon request to do so by AFGI, AMC shall agree to submit to the United States Patent and Trademark Office, subject to AFGI's continued compliance with the terms of this Agreement, a letter of consent to use and registration of APEX FINANCIAL and/or APEX FINANCIAL GROUP and/or APEX FINANCIAL GROUP, INC. and/or any designation that does <u>not</u> include the words "APEX" or "AAPEX" and "MORTGAGE" adjacent to one another without an intervening additional substantive term or phrase, can co-exist in the marketplace with the mark found in U.S. Reg. No. 2,990,801.

13. Nothing herein shall be interpreted to prohibit, limit or otherwise restrict AMC and/or its licensees from exercising any rights that flow from AMC's federal registration of the

mark APEX MORTGAGE CORP. with the USPTO with regard to the use of said mark in connection with the commercial lending services.

14. Nothing herein shall be interpreted to prohibit, limit or otherwise restrict AMC and/or its licensees from exercising any common law rights that flow from AMC's use of the mark APEX MORTGAGE in commerce, including but not limited to the right of AMC and/or its licensees to use said mark in connection with the commercial lending services.

15. AFGI shall continue to use the "APEX FINANCIAL" designation with its lending services. Nothing herein shall be interpreted to prohibit, limit or otherwise restrict AFGI and/or its licensees from exercising any common law rights that flow from AFGI's use of the APEX FINANCIAL GROUP, INC. designation in commerce, including but not limited to AFGI's use of said mark in connection with residential real estate services.

16. This Agreement shall be perpetual and shall have effect throughout the world in accordance with its terms, provided, however, that in the event that either party hereto ceases all use of "APEX" or "AAPEX" as a mark or component of a mark, then the other party's restrictions hereunder shall terminate three (3) years after such cessation of use.

17. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors, assigns, subsidiaries, parent and other related companies.

18. This Agreement constitutes the compromise settlement of disputed claims. Nothing herein shall be construed as an admission of liability or any wrongdoing whatsoever by any party hereto.

19. Each of the parties, on behalf of themselves, their representatives, attorneys, agents, partners, officers, shareholders, directors, employees, subsidiaries, affiliates, divisions, successors, parent companies and assigns, hereby forever releases and discharges the other party

and the representatives, heirs, executors, attorneys, agents, partners, officers, shareholders, directors, employees, subsidiaries, parent companies, affiliates, divisions, successors, assigns, and authorized resellers and licensees of the other party, of and from any and all manner of action, claim or cause of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, demands, losses, damages, costs or expenses which they may have against each other, or those acting on their behalf, as of the Effective Date, whether known or unknown, and which arise out of or relate directly or indirectly to the sales, marketing or use of the name APEX by AFGI and/or its licensees or the sales, marketing or use of the APEX designation by AMC and/or its licensees.

20. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral, relating to such subject matter. This Agreement may not be altered, amended, modified, or otherwise changed in any respect except by an instrument in writing duly executed by authorized representatives of both parties.

21. This Agreement shall be construed as though each party participated equally in drafting it.

22. Each party will bear its own costs and attorneys fees in connection with the Action and the negotiation, drafting and implementation of this Agreement.

23. The parties, and each of them, agree to prepare, execute and file with the USPTO or elsewhere such other documents as may be reasonably necessary to perform the terms of this Agreement.

24. The parties and the individuals signing on behalf of the parties each represent and warrant that the individual is authorized to sign on behalf of the party and thereby bind that party to the terms of this Agreement.

25. This Agreement may be executed in counterparts, each of which is deemed an original.

26. The parties, and each of them, represent that no other person or entity has or claims any liens or other interest in any of the claims or alleged rights described herein and that neither party has assigned, sold, transferred, conveyed or otherwise disposed of any such claims or alleged rights.

27. In the case that either AMC or AFGI materially breaches the above Agreement, reasonable attorneys fees incurred to enforce this Agreement shall be awarded to the prevailing party. The foregoing provision shall not limit AMC or AFGI's right to hereafter seek costs, attorney's fees, damages, and all other forms of relief in the event that AMC or AFGI breaches this Agreement.

_____    Dated: _____
Name:
Title:
*Apex Mortgage Corp.*

_____    Dated: 9/20/07
Name: David Wyatt
Title:
*Apex Financial Group, Inc.*

24. The parties and the individuals signing on behalf of the parties each represent and warrant that the individual is authorized to sign on behalf of the party and thereby bind that party to the terms of this Agreement.

25. This Agreement may be executed in counterparts, each of which is deemed an original.

26. The parties, and each of them, represent that no other person or entity has or claims any liens or other interest in any of the claims or alleged rights described herein and that neither party has assigned, sold, transferred, conveyed or otherwise disposed of any such claims or alleged rights.

27. In the case that either AMC or AFGI materially breaches the above Agreement, reasonable attorneys fees incurred to enforce this Agreement shall be awarded to the prevailing party. The foregoing provision shall not limit AMC or AFGI's right to hereafter seek costs, attorney's fees, damages, and all other forms of relief in the event that AMC or AFGI breaches this Agreement.

_____   Dated: 9-20-07
Name: Theodore H. Kapnek, III
Title: President
*Apex Mortgage Corp.*


_____   Dated: _____
Name: David Wyatt
Title:
*Apex Financial Group, Inc.*